# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN PANTAGES GOMEZ, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security <br><br> Defendant. | Case No.: 17cv1582-MMA (RNB) <br><br> **ORDER:** <br><br> **ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE;** <br><br> [Doc. No. 17] <br><br> **OVERRULING DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;** <br><br> [Doc. No. 18] <br><br> **GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;** <br><br> [Doc. No. 10] <br><br> **DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND** <br><br> [Doc. No. 11] <br><br> **REMANDING FOR FURTHER PROCEEDINGS** |

On August 7, 2017, Plaintiff Nathan Pantages Gomez filed this social security appeal pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),

challenging the denial of his application for a period of disability and disability insurance benefits and Supplemental Security Income. Doc. No. 1 ("Compl."); *see* Doc. No. 17 at 2. The Court referred all matter arising in this appeal to United States Magistrate Judge Bernard G. Skomal for preparation of a Report and Recommendation pursuant to Title 28 of the United States Code, section 636(b)(1)(B), and Civil Local Rule 72.1. *See* 28 U.S.C. § 636(b)(1)(B); S.D. Cal. Civ. L.R. 72.1. On May 10, 2018, the case was transferred to the United States Magistrate Judge Robert N. Block. Doc. No. 15. The parties have filed cross-motions for summary judgment. Doc. Nos. 10, 11. On June 18, 2018, Judge Block issued a Report and Recommendation recommending that the Court grant Plaintiff's motion for summary judgment, deny Defendant's cross-motion for summary judgment, and remand for further proceedings. Doc. No. 17. Defendant has filed objections to the Report and Recommendation [Doc. No. 18 ("Obj.")], and Plaintiff filed a reply brief [Doc. No. 19 ("Reply")].

## LEGAL STANDARD

The duties of the district court in connection with a Magistrate Judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). Where the parties file objections, "[a] judge of the [district] court shall make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). A district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *Wilkins v. Ramirez*, 455 F. Supp. 2d 1080, 1088 (S.D. Cal. 2006).

## DISCUSSION

Defendant objects to the Magistrate Judge's finding that the ALJ erred in evaluating Plaintiff's subjective symptom allegations as not entirely credible. Obj. at 2. Defendant also objects to the Magistrate Judge's finding that any failure to make a proper adverse credibility determination was not harmless error. *Id.* at 8-9.

//

### 1. Relevant Background

In making the underlying determination that Plaintiff's allegations are not entirely credible, the ALJ considered "the [plaintiff's] allegations in his disability reports, headache log, and his testimony at the hearing." Administrative Record ("AR") at 22. Plaintiff's disability report states that his ability to work is limited due to "migraines, five brain surgeries, herniated disc, stroke, anxiety, depression, sciatica, pinched nerve, blood clot in right lung, stroke, and high blood pressure." *Id.* Plaintiff testified at the administrative hearing "that he cannot work due to headaches, dizziness, cognitive problems, and problems concentrating," and that "he has headaches all day[,] is in bed most of the day[, and] he constantly misplaces items and forgets things." *Id.* He further testified "that his headaches have worsened." *Id.* The ALJ found that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* The ALJ provided the following reasons to support his credibility finding: (1) Plaintiff engaged in substantial gainful activity from September 2014 to May 2015; (2) Plaintiff received unemployment insurance benefits during the relevant period at issue; (3) the medical evidence of record indicates that Plaintiff's symptoms were "relatively controlled under the prescribed regimen[;]" (4) some of Plaintiff's statements regarding the limiting effects of his physical impairments were inconsistent with his activities of daily living; and (5) Plaintiff's ability to focus and concentrate indicates that his mental problems are not as limiting as he alleges. *Id.*

The Magistrate Judge found that each reason "did not constitute a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination." *See* Doc. No. 17 at 11-21. Defendant objects only to the Magistrate Judge's findings regarding Plaintiff's symptoms with treatment, Plaintiff's activities of daily living, and Plaintiff's ability to focus and concentrate. Obj. at 4-8.

### 2. Legal Standard

The test for determining whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment

that reasonably could be expected to produce the pain or other symptoms alleged. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1282 n.2 (9th Cir. 1996); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). If the Administrative Law Judge ("ALJ") finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." *Bunnell*, 947 F.2d at 345. These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell*, 947 F.2d at 345-46); *see also Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). Unless there is evidence of malingering, an ALJ can reject a claimant's testimony about the severity of his or her symptoms only by offering "clear and convincing reasons" for doing so. *Reddick*, 157 F.3d at 722; *see also Smolen*, 80 F.3d at 1283-84. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. *Reddick*, 157 F.3d at 722; *Smolen*, 80 F.3d at 1284.

3.   <u>Analysis</u>

As noted by the Magistrate Judge, the ALJ did not cite evidence of malingering and Defendant has not argued there was evidence of malingering. *See* Doc. Nos. 17 at 6; 10-1 at 15; 11-1 at 8-19; Obj. at 3. As such, the ALJ was required to provide clear and convincing reasons for finding Plaintiff not entirely credible. The Court addresses each of Defendant's objections in turn.

   a.   *Control of Symptoms with Treatment*

One of the reasons cited by the ALJ in support of his adverse credibility finding is that "the medical evidence of record reveals that [Plaintiff's] symptoms were relatively controlled under the prescribed treatment regimen." AR at 22. The ALJ noted that Plaintiff's history of pulmonary embolus led to complaints and symptoms, including swelling of the bilateral legs, edema, chest pain, and shortness of breath. AR at 23. In October 2013, Plaintiff was hospitalized for pulmonary embolus related symptoms, including chest pain. *Id.* However, diagnostic tests revealed no evidence of deep venous

thrombosis and a vasodilator nuclear stress test revealed unremarkable for ischemia via electrocardiographic criteria. *Id.* Plaintiff again received emergency treatment for chest pain and/or shortness of breath in January 2013, November 2013, February 2014, May 2014, and May 2015. *Id.* During this time frame and treatment, the ALJ noted that Plaintiff was either attending graduate school and/or engaging in substantial gainful activity. *Id.* At that time, it appears that Plaintiff was receiving Coumadin therapy and anticoagulation therapy. *Id.*

In addition, the ALJ noted that Plaintiff has had a history of headaches since the age of nine and was assessed with chronic migraines. *Id.* Plaintiff received emergency treatment for his headaches in January 2013, May 2014, July 2014, January 2015, and March 2015. *Id.* In April 2015, Plaintiff received emergency treatment and was hospitalized for headaches, numbness, and neck pain. *Id.* At the time of discharge, his headaches had improved. *Id.* Plaintiff was assessed with headaches and neck pain exacerbation of undetermined origin with no evidence of shunt infection or malfunction and that the shunt may be chronically non-functioning. *Id.* Thus, in April 2015, Plaintiff received epidural injections, which were helpful. *Id.* He also received Botox injections and used an H-wave unit during the relevant period. *Id.* The ALJ again noted that Plaintiff was either attending school or working at the time of these visits and hospitalization. AR at 23-24. After April 2015, it appears that Plaintiff did not have any emergency treatment or hospitalizations for headaches and his outpatient visits from July 2015 were unremarkable. AR at 24.

Based on this medical evidence, the ALJ concluded that Plaintiff's symptoms were relatively controlled under the prescribed treatment regimen. *Id.* In support, the ALJ notes that Plaintiff only missed six days of work during this period, and was otherwise able to attend school or work. *Id.* According to the ALJ, this countered Plaintiff's testimony that he is in bed all day. *Id.*

An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Accordingly, this can be a clear and convincing reason supporting an adverse credibility finding. *See Allread v. Berryhill*, No. 2:15-cv-00261-MKD, 2017 WL 727286, at *6-7 (E.D. Wash. Feb. 23, 2017). However, the Magistrate Judge found that "substantial evidence in the record does not support the ALJ's conclusion" that Plaintiff's symptoms were effectively controlled with treatment.[1] Doc. No. 17 at 15. This Court agrees.

For example, Dr. Pollard testified at the administrative hearing that while "there's no specific evidence saying why [Plaintiff] has his headaches, . . . he's very convincing in his testimony." AR at 81. Dr. Pollard clarified that he does not see any inconsistencies with Plaintiff's testimony and the record. AR at 82. Dr. Pollard's opinion is based on his summary of the record, which indicate that Plaintiff's "primary symptoms were headache and neck pain, cognitive changes, depression, anxiety and panic attacks." AR at 53. He also noted that Plaintiff "had a brain tumor, an opiodensobeomar removed in 1991. He has a shunt to prevent hydrocephalus. There was no evidence of recurrence of the brain tumor." AR at 53-54. Dr. Pollard indicated that "[m]ultiple treatments have not been helpful." AR at 54. Notwithstanding this testimony, Dr. Pollard opined that Plaintiff's impairments did not meet or equal a medical listing and that Plaintiff could work at the "light exertional level." AR at 24. Dr. Pollard emphasized that Plaintiff's neck pain and headaches have "no objective basis." *Id.*

However, Dr. Pollard's opinion is based on an incomplete medical record. Dr. Pollard did not review Plaintiff's June 2014 to July 2015 Kaiser Permanente medical records or his February 2014 to January 2015 Palomar Medical Center medical records. *See* AR at 40-41, 48-53. Instead, Dr. Pollard listened to Plaintiff's testimony regarding his most recent treatment at both facilities. *See* AR at 48-53. Plaintiff's testimony

---

[1] Defendant contends that the Magistrate Judge "simply stated that [consideration of the objective medical evidence] alone did not provide a basis for discounting Plaintiff's symptoms" and did not identify any error in the ALJ's consideration. Obj. at 8. Defendant misinterprets the finding. The Magistrate Judge found that while effective treatment can be a clear and convincing reason supporting an adverse credibility finding, here there was not substantial evidence supporting the contention that Plaintiff's symptoms were controlled with treatment. Doc. No. 17 at 15-17.

indicated only that his headaches have worsened since June 2014 due to calcification of the shunt in Plaintiff's head, which caused "scar tissue issues." AR at 48-49. Plaintiff explained that his headaches are "unmanageable," that he has "maybe two good days out of a seven-day period where [he's] not in bed in pain." AR at 49.

Plaintiff's more recent medical records indicate that Plaintiff's headaches continued despite treatment. *See* AR at 785-800. For example, on June 9, 2014, Plaintiff indicated feeling awful headaches during an inpatient EEG Telemetry with Seizure and Spike Detection study. AR at 800-02. The "EEG show[ed] right midtemporal sharps on at least two occasions indicative of a higher risk for seizure" that evening. AR at 800. Plaintiff was discharged on June 10, 2014 with a diagnosis of chronic headaches. AR at 802. Plaintiff saw a doctor on July 1, 2014 regarding his chronic pain and requested switching pain medications. AR at 810. The doctor switched his medication from Dilaulid to Oxycodone, or Percocet. AR at 811. On July 13, 2014, Plaintiff was seen at "Palomar ER" and then sent to "TCMC ER" for his headaches. *Id.* On July 29, 2014, Plaintiff reported to Kaiser Permanente's emergency room complaining of headaches and indicating that he has problems with "neck pain on the right and posteriorly that radiates anteriorly." AR at 808. He indicated that Botox injections and occipital nerve blocks gave him "a month of relief," but he continues to suffer from neck pain, change in cognition, dizziness, and transient blackouts. AR at 808-12. On July 30, 2014, Plaintiff visited Kaiser Permanente for an emergency room follow-up. AR at 811. Plaintiff indicated that he had been prescribed Percocet, but took more than the prescribed amount "due to exacerbation" and asked for a refill. *Id.* The doctor refilled Plaintiff's prescription with a seven day supply. AR at 812. On August 19, 2014 and September 30, 2014, Plaintiff presented with chronic headache pain and again requested a refill of his prescription. AR at 812-14, 819-20.

On January 8, 2015, Plaintiff went to the emergency room for an evaluation of headaches. AR at 909-11. He explained that he has had a headache for two weeks and that it was not responding to treatment. AR at 922. On February 16, 2015, Plaintiff

7

attended a consultation for possible re-injection of epidural cortisone. AR at 831-32. He had recent emergency room visits for his pain and reported a pain level of 8/10. *Id.* He indicated the pain is "sharp" and "radiates mainly to [his] [n]eck and head." AR at 842.

On April 20, 2015, Plaintiff sought treatment for chronic neck pain related to the shunt in his head. AR at 841. He reported receiving epidural steroid injections monthly in the past and requested more injections. *Id.* The doctor noted that an injection would be reasonable, but indicated that Plaintiff should only receive three per year and if that is inadequate to address pain, Plaintiff should look into medication management. AR at 842. On that date the doctor stated that an epidural steroid injection would have a "low" benefit, but gave Plaintiff the injection anyway. AR at 847-851. The next day, Plaintiff saw a triage nurse for headache, numbness, and neck pain that began after his epidural injection. AR at 856. Plaintiff was transferred to a different medical facility to treat him for "shunt series and/or CT." AR at 858. After transfer, Plaintiff was admitted "for pain control." AR at 858-70. Plaintiff's headache and neck pain was found to be "of undetermined origin." AR at 874. By noon, his headache was "overall better," but he still needed "IV dilaudid" and his "usual Percocet." AR at 875-76. On the second day of Plaintiff's hospitalization, the doctor noted that Plaintiff's "persistent headache" still required IV pain meds and that Plaintiff "requires inpatient care to safely and appropriately be treated." AR at 879. During Plaintiff's hospitalization his pain ranged from a three to a ten out of ten. AR at 880.

On June 4, 2015, Plaintiff complained of "ongoing headaches," and explained that he is "[n]ot functional about 4/7 days because of headache[s]." AR at 892. On July 6, 2015, Plaintiff complained of "disabling headache[s] 3-4/7 days per week." AR at 896. On July 28, 2015, Plaintiff again presented with a headache and neck pain with a severity level of 8/10. AR at 899. Plaintiff complained of "having to spend more time in bed" due to his headaches. *Id.*

The medical evidence summarized above indicates that Plaintiff's symptoms were not effectively controlled with treatment. To the contrary, Plaintiff repeatedly presented

with chronic headaches, went to the emergency room or urgent care multiple times for treatment, and reported not being able to function three to four days per week due to headaches. Because the Court finds the ALJ's finding that Plaintiff's symptoms were effectively controlled with treatment is not supported by substantial evidence in the medical record, the Court concludes that this cannot be a clear and convincing reason for making an adverse credibility finding.

### b. *Plaintiff's Activities of Daily Living*

Another reason cited by the ALJ in support of his adverse credibility finding is that Plaintiff's testimony was inconsistent with his activities of daily living. AR at 24. The ALJ noted the following inconsistent activities: (1) exercising 30 minutes a day, six times a week in July 2014; (2) enrollment in a full-time, online master's degree program from the summer of 2013 to July 2014; and (3) heavy lifting in November 2014. *Id.*

Inconsistencies between a plaintiff's testimony concerning his limitations and the plaintiff's activities of daily living are clear and convincing reasons, if supported by substantial evidence, for discrediting a plaintiff's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability.'" *Id.* (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

As such, to base an adverse credibility determination upon a plaintiff's activities of daily living, the ALJ must either explain how the claimant's activities are inconsistent

with his testimony, or must explain how the activities of daily living meet "the threshold for transferrable work skills." *Orn*, 495 F.3d at 639; *see also Fair*, 885 F.2d at 603 (holding that an ALJ may base an adverse credibility finding on activities of daily living "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting").

As an initial matter, Plaintiff's performance of his daily activities was more qualified than the ALJ's description suggests. Plaintiff reported exercising 30 minutes a day 6 days a week at a moderate or strenuous level on July 30, 2014. AR at 810. On August 19, 2014, he reported that exercising more makes him feel "better overall." AR at 813. However, during this time frame, Plaintiff was consistently reporting chronic headaches and neck pain. For example, on July 29, 2014, Plaintiff saw a neurologist for chronic headaches, and earlier in July Plaintiff requested a change to his chronic pain management and went to the emergency room for headaches. *See* AR at 810-11. On November 18, 2014, Plaintiff complained of "anterior chest pain sharp in nature," following a recent move wherein Plaintiff had to lift heavy objects. AR at 820. For some time prior to December 2014, Plaintiff reported "doing the elliptical" three times a week. AR at 836. However, Plaintiff stopped exercising due to his back pain and Plaintiff reported not exercising at all on January 23, 2015. AR at 827, 832. He indicated that he was having low back pain and sciatica symptoms, which were "[p]ainful to the point of not being able to walk." *Id.* He further reported that his sciatica started in 2003 or 2004 and has "intermittent flare" ups of pain. *Id.* The January 2015 episode of sciatica had been ongoing for six weeks and Plaintiff reported that "lifting, bending, head motion, standing" aggravates his pain. AR at 832. The doctor recommended Plaintiff engage in a "home exercise program, therapeutic exercise, thermal modalities and education," which consisted of "stretching." AR at 835-36. On April 29, 2015 and June 4, 2015, Plaintiff again reported not exercising at all. AR at 884.

In the summer of 2013, Plaintiff enrolled in a master's degree program for education at the University of Phoenix to become a teacher. AR at 71. However,

Plaintiff testified that he "had to un-enroll [in July 2014] because [he] was just in bed in so much pain." AR at 71. Plaintiff further explained that he couldn't complete the schoolwork or observations needed because of his chronic pain and because he didn't "have the stamina to sit there on the computer answering questions, reading." AR at 73-74.

Based on the foregoing, the Court concludes that the ALJ's stated rationale pertaining to Plaintiff's activities of daily living is not a valid clear and convincing reason for the adverse credibility determination. First, the Ninth Circuit has noted that minimal daily activities, such as light exercise, have no bearing on a claimant's credibility. *See Vertigan*, 260 F.3d at 1050 (stating that "the mere fact that a plaintiff has carried out certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Second, the ALJ has not described how these tasks are transferrable to a work setting or occupied a substantial part of Plaintiff's day. The ALJ failed to describe how Plaintiff's minimal exercise, heavy lifting while moving, or period of enrollment in an online master's degree program,[2] occupied a substantial part of his day, or how those activities were transferrable to a work setting. *See Orn*, 495 F.3d at 639 (finding substantial evidence did not support the ALJ's adverse credibility finding where "there [was] neither evidence to support that [the claimant's] activities were transferrable to a work setting nor proof that [the claimant] spent a substantial part of his day engaged in transferrable skills"). While Plaintiff attempted to engage in physical exercise and an online master's degree program, his ability to do so was thwarted by his chronic pain. Additionally, "many home activities may not be easily transferable to a work environment where it

---

[2] The Court also notes that each of the activities of daily living listed by the ALJ were not contemporaneous with one another. Plaintiff was enrolled in an online master's degree program from the summer of 2013 to July 2014, engaged in minimal exercise in July 2014, and did some heavy lifting while moving in November 2014.

11

might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1284 n.7 (citation omitted).

        c.       *Plaintiff's Ability to Focus and Concentrate*

The ALJ also reasoned that Plaintiff's ability to focus and concentrate at the administrative hearing supported his adverse credibility finding. AR at 22. He explained that Plaintiff "was articulate and provided specific information regarding his work history, medical history, and personal history at the administrative hearing," which "indicates that his mental problems are not as limiting as he alleges." *Id.* The Magistrate Judge found that this "at least tangentially" related to Plaintiff's complaints of cognitive problems, but did not relate to Plaintiff's testimony regarding chronic, severe headaches. Doc. No. 17 at 18. For this reason, the Magistrate Judge concluded that this was a legally insufficient reason for the ALJ to reject Plaintiff's subjective symptom testimony regarding the pain severity of his headaches. *Id.* In objection, Defendant contends that Plaintiff's cognitive complaints relate to his headaches, as Plaintiff testified they were constant and were affecting him at the hearing. Obj. at 6.

In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements. *Orn*, 495 F.3d at 639-40. However, the ALJ's observations of Plaintiff at the hearing may not form the sole basis for discrediting Plaintiff's testimony. *Id.* at 639; *see also Berglund v. Colvin*, No. 2:15-cv-2332-CKD, 2016 WL 6393767, at *7 (E.D. Cal. Oct. 27, 2016). Accordingly, this Court need not address the ALJ's observations of Plaintiff at the hearing because this reason may not form the sole basis for discrediting Plaintiff's testimony and because the Court agrees with the Magistrate Judge that the first two reasons supporting the ALJ's adverse credibility determination to which Defendant objects are not clear and convincing reasons supported by substantial evidence.

//

12

17cv1582-MMA (RNB)

*d.     Harmless Error*

Defendant also objects to the Magistrate Judge's determination that any error made by the ALJ in discrediting Plaintiff's testimony was not harmless. Obj. at 8. In support, Defendant contends that even though the ALJ discredited Plaintiff's testimony, he included limitations in Plaintiff's residual functional capacity ("RFC") that accommodated his subjective complaints. *Id.* at 9. "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (internal quotation marks and citations omitted). Here, the ALJ found Plaintiff has the RFC "to perform light work . . . except [he] must avoid hazards such as moving machinery and unprotected heights; must avoid climbing ladders, ropes, or scaffolds; is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks with standard industry breaks every two hours; is limited to no interaction with the general public; and is limited to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product." AR at 21. As noted by the Magistrate Judge, this does not take into account Plaintiff's testimony regarding his deteriorating condition wherein Plaintiff is bedridden majority of the week due to his headaches. *See* AR at 49, 61-62. Accordingly, the Court finds the ALJ's adverse credibility determination was not harmless error.

## CONCLUSION

After reviewing the Report and Recommendation in its entirety, the Court finds Judge Block's conclusions are thorough, well-reasoned, and supported by applicable law. Accordingly, the Court **ORDERS** as follows:

1. The Report and Recommendation [Doc. No. 17] is **ADOPTED** in its entirety;

2. Defendant's Objections to the Report and Recommendation [Doc. No. 18] are **OVERRULED**;

3. Plaintiff's Motion for Summary Judgment [Doc. No. 10] is **GRANTED**;

4. Defendant's Cross-Motion for Summary Judgment [Doc. No. 11] is **DENIED**; and

5. The Court **REMANDS** this matter for further proceedings.

**IT IS SO ORDERED**.

Dated: July 20, 2018

Hon. Michael M. Anello
United States District Judge